## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

RICHARD BISBANO, SR. and
RICHARD BISBANO, JR.,[1]

            v.                                          C.A. No. 10-358-ML

STRINE PRINTING COMPANY, INC. and
MICHAEL STRINE, SR.


### MEMORANDUM AND ORDER

MARY M. LISI, Chief District Judge.

The remaining plaintiff in this case, Richard Bisbano, Sr. ("Bisbano"), a Rhode Island resident, brought claims of breach of contract, misrepresentation, and intentional interference with prospective business relations against his former employer, Strine Printing Company ("Strine Printing"), a Pennsylvania corporation, and its President and Chief Operating Officer Michael Strine, Sr. ("Strine," together with Strine Printing, the "Defendants") after Bisbano's employment with Strine Printing was terminated. The matter before the Court is the Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[1]

Any claims raised by Richard Bisbano, Jr. were dismissed by stipulation on June 18, 2012 (Docket # 32).

1

### I. Factual Background[2]

Bisbano has worked in the printing industry since the 1970s, primarily as a sales representative for vendors. SUF ¶ 4. In the course of his work for two different printing service companies, Bisbano interacted with Vanco Industries, Inc., ("Vanco"), a broker in the printing industry. SUF ¶ 7. In December 2006, Bisbano accepted an offer of employment as a sales representative at Strine Printing. SUF ¶ 9. At the commencement of his employment, Bisbano received a Strine Printing handbook, the receipt of which Bisbano confirmed by signing an acknowledgment page (the "Acknowledgement"). SUF ¶ 10, Defs' Exh. C. The Acknowledgment states that "nothing in this handbook or any other policy or communication changes the fact that employment is at-will for an indefinite period unless terminated at any time by you or the Company." Id. The Acknowledgment also provides that "no employee or representative of the Company, other than the President or Vice President, Finance and Administration, has any authority to enter into an employment contract or to change the at-will employment relationship, or to make any agreement contrary to the foregoing." Id. At his September 25, 2012 deposition, Bisbano confirmed that he was always an at-will employee at Strine Printing and that he had no contract

---

[2]
The summary of facts is based primarily on the Defendants' Statement of Undisputed Facts ("SUF") which is, with two noted exceptions, unchallenged by Bisbano. (Docket # 38).

with the company. Defs.' Ex. B, 10:9-14(Docket # 38-2).

During his employment with Strine Printing, Bisbano's compensation, like that of all other sales personnel, was commission-based. SUF ¶ 13.

At the beginning of Bisbano's employment with Strine Printing, the company interacted with Vanco as a broker to obtain printing work from CVS. SUF ¶ 15. However, Vanco did not obtain CVS projects for Strine Printing at a satisfactory level, SUF ¶ 16, and, in mid-2007, Strine Printing ended its relationship with Vanco. SUF ¶ 17. According to Bisbano, he handled the CVS account and "was charged with establishing a direct relationship between [Strine Printing] and CVS." Bisbano's Statement of Disputed Facts ("SDF") ¶ 17. Following the separation from Vanco, Bisbano's sales for 2008, including his sales to CVS, dropped significantly, reducing Bisbano's commission-based pay by about two thirds. SUF ¶¶ 25, 26. Bisbano's earned commissions returned to 2007 levels in 2009, after Strine Printing made capital expenditures to keep up with CVS's printing business. SUF ¶¶ 27, 28.

In April 2010, CVS conducted an investigation regarding Bisbano's disclosure that, while in another company's employ several years earlier, he had contributed $10,300 to assist an employee in CVS's printing department pay for her lease of a luxury vehicle. SUF ¶ 29. Bisbano does not dispute the alleged details of this transaction. SUF ¶ 30-32. The CVS employee was terminated by

CVS. SUF ¶ 29. In addition to investigating Bisbano's disclosure, CVS also conducted a complete review of its print department and print vendors. SUF ¶ 33. Anna Umberto ("Umberto"), CVS's V.P. for strategic procurement, met with Strine Printing.[3] SUF ¶ 34. Umberto and CVS security investigator James Lynch ("Lynch") also met separately with Bisbano. SUF. ¶ 34.  After meeting with Bisbano, who apologized for the incident and indicated that he was interested in moving forward with CVS, Umberto decided that she would "not feel comfortable with [Bisbano] as our account rep on the Strine account or any other account."  SUF ¶¶ 34, 35.

It is undisputed that Umberto had the final say on all procurement decisions and that she executes CVS's printing contracts with vendors. SUF ¶ 35. Umberto communicated her decision to cut all ties with Bisbano to John Cappelletti ("Cappelletti") of CVS's Print Production Department and to Carlos Sanchez ("Sanchez"), CVS's Director of Advertising & Promotion and Cappelletti's supervisor. SUF ¶ 35. Umberto decided that CVS would enter into a contract with Strine Printing; however, she instructed Sanchez and Cappelletti to inform Strine Printing that it must remove Bisbano from the vendor account with CVS. ¶ 37.

In June 2010, Strine decided to terminate Bisbano's at-will employment, "based on CVS's instruction that Bisbano must be

---

[3] It is unclear who represented Strine Printing at that meeting.

removed from the CVS account and the fact that Bisbano did not have other sufficient business accounts to support the continuation of his employment." SUF ¶ 39. Strine's deposition testimony as to Bisbano's termination indicates that, although there were some other accounts on which Bisbano could have worked, Strine did not extend that offer because he "didn't think it was a wise thing to do." SDF ¶ 39, Pltf.'s Ex. D, 92:17-93:4.

On his part, Bisbano asserts that testimony offered by Cappelletti, Sanchez, and CVS strategic sourcing analyst Matthew Iannetta ("Iannetta") refutes Strine's assertion that CVS instructed him to remove Bisbano from the CVS account. SDF ¶ 39. However, the specific question posed to these three individuals during their respective depositions was whether any of them told Strine at a particular meeting in June 2010 that "Bisbano Sr. is not allowed to work on the CVS account or to contact CVS in anyway, otherwise, CVS would not give any additional work to Strine." All three answered the question in the negative. (Emphasis added). Pltf.'s Ex. L, 22:4-19, Ex. M, 17:5-21, Ex. N, 8:2-19. Umberto's statements that (1) she had determined to enter into a contract with Strine Printing; (2) Bisbano had to be removed from the Strine Printing account with CVS; (3) she had instructed Sanchez and Cappelletti to inform Strine Printing accordingly; and (4) Cappelletti told Umberto that he had done so, are all undisputed by Bisbano and they are consistent with Umberto's deposition

5

testimony.  SUF ¶¶ 35-38, Defs.' Ex. D, 13:2-14:24, 18:3-15, 19:12-20:2.

On June 30, 2010, Strine met with Bisbano to inform Bisbano that his employment with Strine Printing was terminated. SUF ¶ 40. The Defendants assert that Bisbano was paid in full for his commissions and expenses.  SUF ¶ 41. On his part, Bisbano maintains that, following the termination of his employment, Strine Printing received "preferred vendor status" with CVS, but that "[n]o commissions have been paid to [Bisbano] for his efforts in procuring this business for [Strine Printing] since 2011." SDF ¶ 41 (emphasis added). On two occasions in July 2010, Bisbano contacted Cappelletti at CVS on behalf of another vendor, but received no response. SUF ¶¶ 42-43.

## II. Procedural History

On July 29, 2010, Bisbano filed the Complaint in Rhode Island state court, which the Defendants removed to this Court on August 26, 2010 on the basis of diversity between the parties. The Defendants filed a motion to dismiss on September 14, 2010, which was denied at the conclusion of a hearing on the matter on January 5, 2011. Bisbano was also advised that he could file an amended complaint. The parties proceeded to discovery. Bisbano did not file an amended complaint. On September 28, 2012, Bisbano voluntarily dismissed a claim for age-based discrimination.

On January 18, 2013, the Defendants filed a motion for summary

6

judgment on all remaining counts of the Complaint, to which Bisbano responded with an objection on March 8, 2013. The Defendants filed a reply thereto on March 15, 2013. The matter is now in order for decision.

## III. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir.2001).

"On issues as to which the nonmovant bears the ultimate burden of proof, he may not defeat a properly focused motion for summary judgment by relying upon mere allegations or evidence that is less than significantly probative." Maldonado-Denis v. Castillo-

Rodriguez, 23 F.3d 576, 581 (citing Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2510-11; Pagano v. Frank, 983 F.2d 343, 348 (1st Cir.1993)). Moreover, "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d at 581. The First Circuit has warned that "[b]rash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." Id. (quoting Dow v. United Bhd. of Carpenters, 1 F.3d 56, 58 (1st Cir.1993)).

## IV. The Complaint

Bisbano's breach of contract claim (Count IV) is based on the contention that "a valid employment agreement exists between Bisbano, Sr. and Defendants," Complaint ¶¶ 63, 69 and that such agreement prohibits the Defendants "from terminating Bisbano, Sr. when they did while continuing to provide printing work to CVS." Id. at ¶ 65. Regarding his related claim in Count V, Bisbano states the "Defendants breached the duty of good faith and fair dealing by terminating Bisbano, Sr. after he had succeeded in developing a direct business relationship with CVS and procuring multi-millions of dollars in CVS printing work." Complaint ¶ 72.

On the same facts, Bisbano asserts claims of unjust enrichment (Count II) and *quantum meruit* (Count VIII) on the grounds that it would be inequitable for Defendants to retain the benefit of a

8

direct relationship with CVS that was cultivated by Bisbano, id. at ¶ 55, 91. With respect to the claim of *quantum meruit*, Bisbano specifies that he seeks compensation for "working for the benefit of Defendants related to CVS printing work starting in January 2010." Complaint ¶ 91.

Bisbano also states that he "had a business relationship or expectancy with respect to CVS" and that, "[b]y terminating Bisbano, Sr. and continuing its [sic] business relationship with CVS, Defendants intentionally interfered with Bisbano, Sr.'s business relationship or expectancy with respect to CVS." (Count III), Complaint ¶¶ 57, 59.

Further, Bisbano raises claims of intentional and negligent misrepresentation (Counts VI and VII, respectively). Specifically, Bisbano alleges that Strine represented to him that, as long as Bisbano "continued to bring in CVS printing business, Bisbano, Sr. would be employed at Strine [Printing] on terms the same as those of his current terms of employment." Id. ¶ 75, 83. According to Bisbano, those representations were false and were made by the Defendants "with the intent of inducing Bisbano, Sr. to remain employed at Strine [Printing] and continue to cultivate a direct business relationship with CVS." Id. ¶¶ 78, 86. Bisbano seeks unspecified damages, pre-judgment interest, costs, and attorneys' fees.

**V. Defendants' Summary Judgment Motion**

Regarding Bisbano's unjust enrichment claim (Count II), the Defendants assert that Bisbano was compensated for the services he performed during his employment and that he is not entitled to additional compensation on the ground that CVS awarded printing work to Strine Printing after Bisbano's employment was terminated. Defs.' Mem. 8 (Docket # 37-1).

The Defendants assert that Bisbano's claim of intentional interference with prospective contractual relations (Count III) fails as a matter of law because (1) CVS contracted with Strine Printing, not Bisbano; (2) Umberto decided that there would be no further interaction between CVS and Bisbano after his role in financing a vehicle lease for a (now terminated) CVS employee was revealed; and (3) efforts by Bisbano to reconnect with CVS after the termination of his employment with Strine Printing were unsuccessful, demonstrating that CVS was following Umberto's directive. Id. 8-9.

With respect to Bisbano's contractual claims (Counts IV and V), the Defendants point out that Bisbano was an at-will employee and there was no employment contract between Bisbano and Strine Printing. The Defendants reject Bisbano's suggestion that there was an "implied contract" because nothing in the record gives "rise to any reasonable belief that Bisbano was anything other than an at-will employee." Id. at 10.

10

Finally, regarding Bisbano's claims of intentional and negligent misrepresentation (Counts VI and VII), the Defendants maintain that any statements made by Strine to Bisbano do not change the fact that Bisbano was an at-will employee and that, in light of that fact, Bisbano's reliance on so-called promises of job security was neither reasonable nor actionable. Id. at 12-13.

## VI. Bisbano's Objection

In response to the Defendant's motion for summary judgment, Bisbano maintains that (1) the Defendants were unjustly enriched by benefitting from a relationship with CVS which Bisbano had established, Obj. 4; (2) Bisbano "maintained a discernible business relationship with CVS" and the Defendants interfered with that relationship when they terminated Bisbano's employment, id. at 8; (3) Strine's communications to Bisbano created an express oral agreement or, at least, an implied agreement between Bisbano and the Defendants, id. at 9; and (4) Bisbano reasonably relied on Strine's misrepresentation that Bisbano's employment would continue as long as Bisbano continued to procure CVS printing work for Strine Printing, id. at 12-15.

## VII. Discussion

A. Unjust enrichment

Under Rhode Island law, a claim for unjust enrichment "is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving

11

property or benefits without making compensation for them." Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006)(citing R & B Electric Co. v. Amco Construction Co., 471 A.2d 1351, 1355 (R.I.1984)). To recover under a claim for unjust enrichment,

> "a plaintiff is required to prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof." Id. at 99 (quoting Bouchard v. Price, 694 A.2d 670, 673 (R.I.1997)); Anthony Corrado, Inc. v. Menard & Co. Building Contractors, 589 A.2d 1201, 1201-02 (R.I.1991).

In this case, Bisbano essentially seeks compensation for work that CVS awarded to Strine Printing after Bisbano's employment was terminated, on the grounds that Bisbano had an existing relationship with CVS before he began working for Strine Printing and that he continued to cultivate that relationship throughout his employment. It is undisputed that, while Bisbano was working for Strine Printing, he was compensated on a commission basis for sales he made to clients, primarily CVS. In 2007, while Strine Printing was still interacting with Vanco as a broker, Bisbano earned $315,858 in commissions; after the relationship was severed, Bisbano's commissions dropped to $102,636 in 2008. The following year, after Strine Printing had made some capital expenditures to keep up with CVS's demand, Bisbano's pay went back up to $315,737.

12

Bisbano has not alleged, and there is no evidence in the record, that he was tasked with any additional efforts related to CVS other than that of a sales representative.

It is also undisputed that, notwithstanding the contractual relationship between CVS and Strine Printing, Strine Printing has to bid on each printing project and CVS could elect to award a project to other vendors. SUF ¶ 24.  Those circumstances are distinguishable from those in Arrison v. Information Resources, Inc., on which Bisbano relies. See Arrison v. Information Resources, Inc., No. C95-3554THE, 1999 WL 551232 (N.D. Cal. Jul. 16, 1999).  In Arrison, the plaintiff sales representative ("Arrison") was employed by the defendant corporation ("IRI") software division pursuant to a written employment contract. Upon specific request by IRI, Arrison devoted extensive efforts in cultivating an expanding relationship between IRI and a client corporation ("Oracle"). Specifically, Arrison worked on developing a value added resale ("VAR") arrangement with Oracle, which was rendered obsolete when Oracle decided to purchase the IRI software division. The district court determined that IRI was not contractually obligated to compensate Arrison for the VAR work because neither the VAR, nor the contract addressing Arrison's VAR compensation was ever consummated. However, because Arrison, in addition to the tasks for which he was compensated, had rendered services to IRI by making extraordinary efforts to improve the

relationship with Oracle, the district court concluded that failure to compensate Arrison for those services would unjustly enrich IRI. <u>Arrison</u> at 7.

By contrast, there is nothing to indicate that Strine Printing asked Bisbano to provide additional, uncompensated services related to the CVS account, nor does Bisbano offer any evidence that he did so. By all accounts, Bisbano was a successful sales representative and was compensated accordingly; he fails to establish, however, that his efforts were responsible for sales to CVS <u>after</u> the termination of his employment or that he conferred any additional benefit on Strine Printing.

Moreover, Bisbano's assertion that "the Defendants continue to benefit from the Plaintiff/CVS relationship," entirely fails to acknowledge that CVS decided to sever that relationship because Bisbano admitted his role in financing a vehicle lease for a CVS employee who worked in the CVS print department. Under those circumstances, equity does not require that Strine Printing pay anything to Bisbano for sales it has been making to CVS after Bisbano's employment was terminated.

B. Intentional Interference with Prospective Contractual Relations

To recover for a claim of intentional interference with prospective contractual relations, a plaintiff must show: "(1) the existence of a business relationship or expectancy, (2) knowledge

14

by the interferer of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." Avilla v. Newport Grand Jai Alai LLC, 935 A.2d 91, 98 (R.I. 2007) (quoting L.A. Ray Realty v. Town Council of Cumberland, 698 A.2d 202, 207 (R.I.1986)); see Roy v. Woonsocket Institution for Savings, 525 A.2d 915 (R.I.1987). In addition, "the elements of the tort require showing an 'intentional and improper' act of interference, not merely an intentional act of interference." Avilla v. Newport Grand Jai Alai LLC, 935 A.2d at 98.

It is undisputed that, in the instant case, the contractual relationship was between Strine Printing and CVS and that the relationship between Bisbano and CVS was limited to that between a sales representative and the client of that sales representative's employer. That relationship was severed unilaterally by CVS after Bisbano disclosed to CVS that he had paid $10,300 to assist a CVS printshop employee - whose employment was terminated by CVS - in leasing a luxury car. That conduct by Bisbano occurred years earlier, while he was in the employ of a different printing vendor. There is nothing in the record to support that Strine Printing's decision to terminate Bisbano's employment - after CVS had undisputedly decided it could no longer work with Bisbano - interfered in anyway with the relationship between CVS and Bisbano.

Bisbano asserts that "a dispute of material fact exists"

whether Umberto's directive was communicated to Strine Printing "to remove the Plaintiff from the Strine/CVS account, and, if he was not removed, CVS would cease to provide printing work to Strine" Obj. 7. As noted in the summary fact section herein, the second part of that statement was not part of Umberto's testimony. Instead, Umberto explained that "[w]e would enter into a contract with Strine, but my direction, like it has been on even other accounts, if I don't feel that the account rep. is what we need for the company, then I will ask that the account rep. be switched off." Defs.' Ex. D, 14:6-12. Moreover, it is undisputed by Bisbano that Umberto decided that she was "not comfortable with [Bisbano] as our account rep. on the Strine account or any other account;" that she instructed Sanchez and Cappelletti to inform Strine Printing to remove Bisbano from the vendor's account with CVS; and that Cappelletti informed Umberto that he had done so. SUF ¶¶ 35-38.

Based on the foregoing, Bisbano's contention that, by terminating his employment, Strine Printing caused "the cessation of [Bisbano's] relationship with CVS" is entirely unsupported. The relationship between Bisbano and CVS (which was not, as Bisbano describes it, "contractual") ceased because of Bisbano's conduct that occurred years before he even entered Strine Printing's employment. Put another way, the end of Bisbano's relationship with CVS was of Bisbano's own making and unrelated to any action taken

16

by Strine Printing before or after the termination of Bisbano's employment. Given the undisputed facts of this case, Bisbano's claim of Intentional Interference with Prospective Contractual Relations cannot withstand the Defendants' motion for summary judgment.

C.   Breach of Contract

Bisbano's breach of contract claim is based on the contention that certain communications between Bisbano and Strine, as a representative of Strine Printing, "created an express oral contract or, at the very least, an implied contract." Obj. 9. Essentially, Bisbano takes the position that, because Strine Printing continued to perform printing services for CVS even after Bisbano's employment was terminated, Bisbano was entitled to continued employment at Strine Printing. Id. at 10.

An implied-in-fact contract "'is a form of express contract wherein the elements of the contract are found in and determined from the relations of, and communications between the parties, rather than from a single clearly expressed written document.'" Haviland v. Simmons, 45 A.3d 1246, 1257 (R.I. 2012)(quoting Marshall Contractors, Inc. v. Brown University, 692 A.2d 665, 669 (R.I.1997)). For parties to form a valid contract, "each must have the intent to be bound by the terms of the agreement." Weaver v. Power Conversion Corp., 863 A.2d 193, 198 (R.I.2004)(citing Rhode Island Five v. Medical Associates of Bristol County, Inc., 668 A.2d

1250, 1253 (R.I.1996)). "'Under traditional contract theory, an offer and acceptance are indispensable to contract formation, and without such assent a contract is not formed.'" Weaver v. Power Conversion Corp., 863 A.2d at 198 (quoting Smith v. Boyd, 553 A.2d 131, 133 (R.I.1989)). "The long-recognized elements of a contract are 'competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation.'" Rhode Island Five v. Medical Associates of Bristol County, Inc., 668 A.2d at 1253(quoting Black's Law Dictionary 322 (6th ed. 1990)).

It is well-established law in Rhode Island that employees "who are hired for an indefinite period with no contractual right to continued employment are at-will employees subject to discharge at any time for any permissible reason or for no reason at all." DelSignore v. Providence Journal Co., 691 A.2d 1050, 1052 n. 6 (R.I. 1997)(citing Volino v. General Dynamics, 539 A.2d 531, 532 (R.I.1988); Pacheo v. Raytheon Co., 623 A.2d 464, 465 (R.I.1993)("It is not the role of the courts to create rights for persons whom the Legislature has not chosen to protect.")).

Rhode Island courts are reluctant to imply "employment contracts from manuals, handbooks, or any other extra-contractual sources." Day v. City of Providence, 338 F.Supp.2d 310, 320 (D.R.I. 2004) (citing In Roy v. Woonsocket Inst. for Savings, 525 A.2d 915 (R.I.1987)); see also DelSignore v. Providence Journal Co., 691 A.2d at 1052 (rejecting plaintiff's unsupported contention that

defendant's employee manuals created an implied contract).

In Galloway v. Roger Williams University, which Bisbano seeks to distinguish, the plaintiff, a former dean of admissions, brought claims of breach of contract and misrepresentation against the University after his employment was terminated. Galloway v. Roger Williams University, 777 A.2d 148 (R.I. 2001). Galloway, an at-will employee, contended that he relied on assurances by the V.P. of human resources and by the University President that his position was secure and that he would be re-appointed. The Rhode Island Supreme Court affirmed summary judgment in the University's favor, concluding that Galloway's reliance on the "so-called promises ... was neither reasonable nor actionable." Id. at 150.

In this case, it is undisputed that Bisbano was an employee at-will; he had no employment contract with Strine Printing. Bisbano acknowledged his awareness of that fact when he signed the Acknowledgment at the commencement of his employment with Strine Printing, Defs.' Exh. C., and he also conceded that fact at his deposition. Defs.' Ex. B, 10:5-14. As set forth in the Acknowledgment, Strine, as President of Strine Printing, was "authorized to enter into an employment contract or to change the at-will employment relationship." Defs.' Ex. C. However, there is no indication in the record that Strine intended to change the terms of Bisbano's at-will employment.

According to Bisbano, over the course of his employment with

19

Strine Printing, Strine communicated to him that "as long as [Bisbano] continued to bring in CVS printing business, he would be employed at [Strine Printing]". Id.  Bisbano further explains that, throughout the course of his employment with Strine Printing, "there was a continual saying, stroking, whatever you want to say, as long as we do CVS, we're going to be all right, we'll prosper, your whole family with [sic] be back working here again." Id., 75:3-8. In addition, Bisbano relies on various communications he received from Strine in which Strine (1) points out how important the CVS account is to both Strine Printing and Bisbano, Pltf.'s SUF ¶¶ 12-14; (2) expresses his appreciation for Bisbano's efforts, id. ¶ 16; and (3) advises Bisbano that Strine Printing is "willing to purchase any and all additional printing equipment necessary to meet CVS's printing needs." Id. ¶ 15. None of those communications from Strine expressed unequivocally that Strine promised to change Bisbano's at-will status.

Bisbano also maintains that Strine repeatedly told him that "as long as [Strine Printing] did work for CVS that he [Bisbano] would be employed as a sales representative at [Strine Printing] and that it would be impermissible for [Strine Printing] to terminate his [Bisbano's] employment." Pltf.'s SUF 17. The only support for this contention, however, is Bisbano's own deposition testimony, in which he voiced his understanding that, because Bisbano "was the one that brought CVS to them," Strine Printing had

to keep him on as a sales representative as long as Strine Printing was performing printing services for CVS. Pltf.'s Ex. A, 73:4-9.

None of Strine's communications to Bisbano support this interpretation. Strine states in a July 14, 2007 e-mail to Bisbano: "WE MUST make things work out for BOTH of us. CVS can take care of all of it. As you know I'll do whatever it takes to get business and please your/our customers." Pltf.'s Ex. I.  In a December 3, 2007 e-mail, Strine responds to Bisbano's announcement that Strine Printing had been awarded the CVS Easter promotion. Strine acknowledges the importance of this event for both Strine Printing and Bisbano, and he assures Bisbano that "[e]verything in my (our) power will be done to make sure everything goes perfect." Pltf.'s Ex. J. While Strine expressed his appreciation for Bisbano's work, the evidence offered by Bisbano fails to establish that Strine promised him something more than his own best efforts to please CVS.

Moreover, Bisbano's interpretation is inconsistent with other assertions he has raised in that respect. In the Complaint, Bisbano alleges that, if he "delivered" CVS printing work, "both Strine and Bisbano, Sr. both [sic] would prosper and their employment relationship would continue," Complaint ¶ 25, and that, "as long as Bisbano, Sr. continued to bring in CVS printing business, Bisbano, Sr. would be employed at Strine on terms the same as those of his

21

current term of employment.[4]" Complaint ¶ 29. There is nothing in the record to support Bisbano's contention that his at-will employment status would be changed or that his employment would continue as long as Strine Printing was performing printing services for CVS.

In sum, even when considered in the light most favorable to Bisbano, Bisbano's position is unsupported by any evidence in the record apart from his own interpretation of Strine's communications and, as such, it is insufficient to withstand a motion for summary judgment. The undisputed facts reveal that Bisbano was able to increase sales to the CVS account and that his commission based compensation was increased accordingly. There is no evidence that Strine Printing asked Bisbano to perform additional, uncompensated tasks in order to improve the company's relationship with CVS, or that Bisbano's performance of such tasks resulted in a change to Bisbano's at-will employment status.

Likewise, Bisbano's assertion that he and his son were "solely responsible for the process in which Strine [Printing] obtained 'preferred vendor status' with CVS" is unsupported by the record. As explained by Strine, Strine Printing was required to go through several steps to obtain "preferred vendor status," which included making a presentation to a combined Marketing and Procurement Group

---

[4]

Under the current terms of his employment, Bisbano, Sr. was an at-will employee.

(an event that Bisbano "helped orchestrate."). Pltf.'s Ex. D, 71:18-24.   Moreover, Bisbano conceded that, notwithstanding the contract between Strine Printing and CVS, Strine Printing was required to bid for each printing project and CVS could award a project to other vendors. SUF ¶ 24.

Even if, as Bisbano contends, Strine's comments to Bisbano were construed as constituting an implied-in-fact contract, those comments, at most, establish that Strine intended to continue Bisbano's employment as long as Bisbano made sales to CVS and not, as Bisbano contends, as long as Strine performed printing services for CVS. It is undisputed, however, that Bisbano was no longer able to fulfill his side of the purported bargain once CVS had decided to cut all ties with Bisbano. Under those circumstances, any additional sales to CVS on Strine Printing's behalf would be made by someone other than Bisbano, and the condition upon which, according to Bisbano, his continued employment with Strine Printing depended, could no longer be met by Bisbano.

For all of those reasons, the Court is of the opinion that Bisbano has not met his burden of raising an issue of material fact sufficient to avoid the Defendants' motion with respect to his breach of contract claim. In the absence of a binding contract between the parties, Bisbano's claim for breach of the implied covenant of good faith and fair dealing must fail as well. See Centerville Builders, Inc. v. Wynne, 683 A.2d 1340, 1342 (R.I.

1996)(requirement that "virtually every contract contain[] an implied covenant of good faith and fair dealing between the parties ... applies only after a binding contract is formed").

   D. Misrepresentation

   Bisbano has raised claims of both intentional and negligent misrepresentation that are nearly identical.[5] Specifically, Bisbano alleges that Strine represented to Bisbano that, as long as Bisbano brought in CVS printing business, Bisbano's employment at Strine Printing would continue "on terms the same as those of his current terms of employment and that Strine and Bisbano, Sr. would both prosper." Complaint ¶¶ 75, 83.  Bisbano states that he justifiably relied on such representation and that, but for those representations, he "would not have cultivated a direct business relationship with CVS." Id. ¶¶ 79, 87. Leaving aside the fact that the "current terms of employment" made Bisbano an at-will employee and that the cultivation of a direct relationship with CVS (after discontinuing the use of a broker) increased Bisbano's commission to more than $300,000, these claims also suffer from lack of factual support.

   To recover for a claim of intentional misrepresentation, a plaintiff must show that the defendant "in making the statement at

---

[5]

   In the intentional misrepresentation claim, Bisbano alleges that the Defendants "knew" that the representations were false; in the negligent misrepresentation claim, Bisbano alleges that the Defendants "knew or should have known" this. Complaint ¶¶ 77, 85.

issue, knew it to be false and intended to deceive, thereby inducing [the plaintiff] to rely on the statements to [his] detriment." Katz v. Prete, 459 A.2d 81, 84 (R.I.1983)(listing cases). To support a claim of negligent misrepresentation, the plaintiff bears the burden to "establish the following elements: '(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.'" Francis v. American Bankers Life Assur. Co. of Florida, 861 A.2d 1040, 1046 (R.I.2004)(quoting Zarrella v. Minnesota Mutual Life Insurance Co., 824 A.2d 1249, 1257 (R.I.2003)).

It is undisputed that Bisbano was an employee at-will throughout his employment at Strine Printing and that, unless his status was changed by an authorized representative of the company, Bisano's employment could be terminated at any time. As discussed in Section VII C. herein, none of Strine's communications to Bisbano served to establish a contractual obligation on the part of Strine Printing to offer continued employment to Bisbano. See, supra. Moreover, there is nothing to support Bisano's contention

that any of Strine's communications to Bisano were false and that they were intended to induce Bisbano to do anything beyond performing his work as a sales representative. Bisbano's compensation depended on making sales of printing services to CVS; therefore, it was not only in the best interest of Strine Printing, but in that of Bisbano to direct his efforts to preserve and strengthen the relationship with CVS. To interpret Strine's acknowledgment of that fact and his general words of encouragement to Bisbano as a binding commitment for continuing employment - particularly in the absence of any specific terms - was not reasonable.

E. Quantum Meruit

Although the Complaint includes a claim of *quantum meruit* (Count VIII) that was not expressly dismissed, Bisbano states in his objection to the Defendants' motion for summary judgment that he "has pled an unjust enrichment claim as opposed to a *quantum meruit* claim," Obj. at 4 n. 2 (emphasis added). The Defendants seek summary judgment as to all of the remaining counts pled in the Complaint; however, Bisbano has offered no argument with respect to the *quantum meruit* claim. In light of Bisbano's statement that he has pled an unjust enrichment claim instead and, in the absence of any argument by Bisbano regarding the *quantum meruit* claim, the Court takes this as an indication that Bisbano no longer intends to

pursue that claim.

## Conclusion

For the reasons stated herein, the Defendants' motion for summary judgment is hereby GRANTED and Counts II through VIII are DISMISSED. The clerk is instructed to enter judgment in favor of the Defendants.


/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge

May 8, 2013